UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY, § <br> AS SUBROGEE OF § <br> ARCELORMITTAL TEXAS HBI LLC, ET AL. § <br> *Plaintiff,* § <br> § <br> VS. § <br> § CIVIL ACT. NO. 2:24-cv-00182 <br> MIDREX TECHNOLOGIES INC.; § <br> SIEMENS INDUSTRY, INC.; LEXICON, INC.; § <br> PRIMETALS TECHNOLOGIES USA LLC; § <br> ALTRAD SERVICES LIMITED; AND § <br> ALTRAD SERVICES LIMITED, § <br> f/k/a ALTRAD YORK LININGS LIMITED, § <br> *Defendants.* § <br> § **JURY TRIAL DEMANDED** | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff, AMERICAN HOME ASSURANCE COMPANY, AS SUBROGEE OF ARCELORMITTAL TEXAS HBI LLC, ARCELORMITTAL USA HOLDINGS III LLC, AND ARCELORMITTAL HBI HOLDINGS LLC ("Plaintiff") complains of Defendants MIDREX TECHNOLOGIES INC.; SIEMENS INDUSTRY, INC.; LEXICON, INC.; PRIMETALS TECHNOLOGIES USA LLC; ALTRAD SERVICES LIMITED; and ALTRAD SERVICES LIMITED, formerly known as ALTRAD YORK LININGS LIMITED (collectively referred to as "Defendants"), respectfully showing the Court as follows:

I. **PARTIES**

1. Plaintiff, American Home Assurance Company, is incorporated in New York with its principal place of business in New York. Plaintiff is a citizen of the State of New York and no other states. Plaintiff is an eligible foreign insurer. Plaintiff files this cause as the subrogee and in the name of ArcelorMittal Texas HBI LLC, ArcelorMittal USA Holdings III LLC, and ArcelorMittal HBI Holdings, LLC (collectively "Arcelor").

2. Defendant Midrex Technologies, Inc. ("Midrex") is a Delaware Corporation doing business in the State of Texas, with its principal place of business in North Carolina. Lexicon is a citizen of both Delaware and North Carolina and no other states.

3. Defendant Siemens Industry, Inc. ("Siemens") is a Delaware Corporation doing business in the State of Texas, with its principal place of business in Georgia. Siemens is a citizen of both Delaware and Georgia, and no other states.

4. Defendant Lexicon, Inc. ("Lexicon") is an Arkansas corporation doing business in the State of Texas, with its principal place of business in Arkansas. Lexicon is a citizen of the State of Arkansas, and no other states.

5. Defendant Primetals Technologies USA LLC ("Primetals") is a Delaware Corporation doing business in the State of Texas, with its principal place of business in Georgia. Primetals is a citizen of both Delaware and Georgia, and no other states.

6. Defendant Altrad Services Limited is a United Kingdom limited company doing business in the State of Texas, with its headquarters located in York, United Kingdom. Altrad Services Limited is a citizen of the United Kingdom and not a citizen of any state. Upon information and belief, Altrad Services acquired the assets and liabilities of Altrad

York Linings Limited after the incident made the basis of this suit.[1] Therefore, Altrad Services Limited is the successor in interest to Altrad York Linings Limited.

7. Defendant Altrad York Linings Limited, ("Altrad") is a United Kingdom limited company doing business in the State of Texas, with its headquarters located in York, United Kingdom. Altrad is a citizen of the United Kingdom and not a citizen of any state.

## II.   JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of parties and the amount in controversy exceeds $75,000.00, exclusive of interests and costs. No Defendant is a citizen of the same state as Plaintiff.

9. This Court has general jurisdiction over the Defendants as they have conducted systematic and continuous business activities in the State of Texas and this District and Division.

10. Venue is properly in this District and Division pursuant to 28 U.S.C. §1391(a) because the Defendants conducted business within this District and Division within the meaning of 28 U.S.C. §1391(a) and because the events giving rise to this cause of action occurred in this District and Division.

## III.   FACTUAL BACKGROUND

11. Arcelor's iron reduction plant, located in Corpus Christi, Texas, is one of the largest iron reduction plants in the world, and the largest in the United States. With a capacity of two million tons of iron production per year, this plant makes use of the

---

[1] "Altrad" as used throughout this pleading means "Altrad Services Limited" and/or "Altrad York Linings Limited."

Midrex process for reducing iron, turning iron ore, in the form of iron oxide pellets, into usable, useful iron by way of a gas-shaft furnace that, by application of heat and gases, removes the oxygen bound to the iron, leaving behind the now purified iron which is then turned into hot briquetted iron, an ideal feedstock for the exacting needs of the American steel industry.  As is to be expected, a process on this scale is reliant on a mixture of exceptional technology and the skill of the workers involved in the process, with every piece of the plant expected to be held to the highest standards of build quality to ensure not only a quality product but also to protect both the workers and surrounding community against the dangers inherent in such high temperature and pressure applications.

12.     This suit is brought as a result of a fire that took place on or about August 14, 2022, at Arcelor's direct reduced iron plant located at 2800 Kay Bailey Hutchinson Road, Portland, Texas 78374.  A vertical expansion joint located on the bustle gas line, an essential component in the Midrex iron reduction process, suffered a failure of the refractory material and the insulation lining the interior of the expansion joint, resulting in a rupture in the joint and a fire that necessitated an emergency shutdown of the line and ultimately the replacement of the entire joint.  Thankfully, quick and capable emergency work on the part of the plant's staff prevented any loss of life or damage to the surrounding area, but, unfortunately, the plant itself suffered significant damages that necessitated major repair.  As a result, Plaintiff's insured, Arcelor, sustained significant damages.  Nothing Arcelor did caused or contributed to the failure of the expansion joint

joint, and Arcelor took appropriate steps to mitigate the damages caused as a result of the failure of the expansion joint.

13. This failure resulted in total economic damages totaling $6,952,791.51 as a consequence of the property damage, interruption of business, and reasonable and necessary costs to repair the plant to its ordinary working condition prior to the failure.

14. The expansion joint, and the refractory material, insulation, and metal components within the expansion joint, was designed, manufactured, sold, and installed by Defendants.

## IV.   FIRST CAUSE OF ACTION: NEGLIGENCE

15. Plaintiff incorporates the allegations set forth in the previous paragraphs.

16. The plant and its components were constructed by Siemens, Lexicon, Primetals, and Altrad, operating under the instruction and guidance of Midrex. Midrex, being the licensor of the Midrex process, provided the designs for the construction performed by both Midrex and the other four defendants. Midrex further continued their involvement with the plant in the form of ongoing inspections which nonetheless failed to identify the defective materials installed under their watch.

17. The negligence of Defendants, acting by and through their agents, vice-principals, and/or employees, caused the injury to Arcelor as described below.

18. Defendants owed a duty to the general public and the owners and operators of the plant to use ordinary care in the design, manufacture, sale, warnings, and installation of the reduction plant and its component parts. The event was proximately caused by the negligence of Defendants in failing to enact and adhere to the standards of ordinary care

for a company engaged in the construction and installation of refractory materials, the adherence to which would have prevented this accident. Defendants therefore failed to use ordinary care by, among others, the following ways:

- As to all defendants, failure to employ reasonable quality assurance methods in the manufacture of the expansion joint;

- As to Midrex and Altrad, failure to employ reasonable quality assurance methods in the manufacture of the refractory lining;

- As to all parties, failure to employ reasonable quality assurance methods in the construction and installation of the expansion joint;

- As to Midrex and Altrad, failure to inspect the expansion joint for defects;

- As to all parties, failure to employ precautionary procedures to prevent installation of defective materials;

- As to Altrad, failure to properly mix the refractory substrate;

- As to Midrex and Altrad, failure to properly test the refractory substrate for quality;

- As to Altrad, failure to properly apply the refractory substrate;

- As to all parties, failure to properly test the application of the refractory substrate;

- As to all parties, failure to inspect the refractory substrate;

- As to Altrad, failure to train their employees in the proper mixing of refractory substrate;

- As to Altrad, failure to supervise their employees in the proper mixing of refractory substrate;

- As to Altrad, failure to properly train their employees in the proper application of refractory substrate;

- As to Altrad, failure to properly supervise their employees in the proper application of refractory substrate;

- As to Midrex and Altrad, failure to adequately warn of the dangers of the improperly installed refractory lining;

- As to Midrex and Altrad, failure to adequately warn of the dangers of the improperly installed insulation layer;

- As to Midrex and Altrad, failure to instruct their employees in the methods to construct a refractory lined pipe; and

- As to all parties, failure to warn the purchaser of the latent defects in the manufactured products which were not reasonably discoverable by the end user.

But for the breach of these duties to use ordinary care as a professional entity engaged in the business of plant construction and iron reduction manufacturing components, the accident would not have taken place and the damages accrued therefrom would not have been incurred.

19. Plaintiff would show that the conditions and/or instrumentalities involved in the incident complained of herein were under the management and control of the Defendants, and/or their agents, servants, and employees. Plaintiff would further show that the character and the event causing Arcelor's damages would not ordinarily occur in the absence of negligence and, under these circumstances, the Defendants' negligence can be inferred under the doctrine of *Res Ipsa Loquitor*.

## V.   SECOND CAUSE OF ACTION: STRICT PRODUCTS LIABILITY

20.   Plaintiff incorporates the allegations set forth in the previous paragraphs.

21.   The expansion joint, designed and manufactured by Defendants Midrex and Altrad, respectively, was defective, and Defendants are liable to Arcelor under a theory of strict products liability on the basis of a design and/or manufacturing defect.

22.   The joint in question was a composite structure of metal and refractory material which was supposed to have been a cast structure free of defects as per the designs from Midrex for use in their production system.  Upon information and belief, the design was by Midrex, with the construction of refractory portion of the joint itself by Altrad and the final assembly transported to the plant for installation.

23.   The manufacture of the expansion joint deviated in its construction or quality from the specifications or planned output in a manner that made it unreasonably dangerous for its intended use in the Midrex process of direct iron reduction.  This product, the expansion joint, was defective when it left the hands of the manufacturers, the Defendants.  The expansion joint reached the plant without substantial change in the condition in which it was originally manufactured and sold, and was not materially altered in any way that would affect the dangerous conditions caused and created by Defendants.

24.   These defects were the producing cause of the damages to Arcelor.  At the time of the manufacturing of the joint, a safer alternative design existed that was available and economically viable, without diminishing the utility of the product, and the safer

alternative design would have in reasonable probability prevented the damages in question, or greatly reduced their severity.

25. Nothing Arcelor did caused or contributed to the expansion joint being unreasonably dangerous, and the expansion joint was used only for the intended purposes for which it was designed and as Arcelor was directed by Defendants.

## VI.  DAMAGES

26. Plaintiff incorporates the allegations in the previous paragraphs.

27. By reason of the occurrence made the basis of this action, including the combined conduct on the part of the Defendants, Arcelor suffered significant economic damages to their real and personal property, as well as additional costs necessitated in the necessary shutdowns to business and reasonable costs incurred in the retention of specialist companies to repair and replace the destroyed expansion joint.

28. The costs incurred as a result of the Defendants' failures to properly design, manufacture and/or install the expansion joint were reasonable and necessary.

29. At all times material, Arcelor and its property were covered by a policy of insurance with Plaintiff. Pursuant to the terms of the policy, after application of a deductible, Plaintiff was called upon to make payments to and/or upon behalf of Arcelor. Accordingly, Plaintiff has become subrogated to Arcelor's claims and damages against the Defendants herein, to the extent of payment.  Plaintiff further seeks to recovery Arcelor's deductible from Defendants, as allowed under the insurance policy.

30. Defendants are jointly and severally liable to Plaintiff for the damages incurred and paid.

## VII. JURY DEMAND

29. Plaintiff demands a jury trial.

## PRAYER

WHEREFORE Plaintiff prays for judgment against Defendants in an amount not less than the sum of $6,952,791.51, with pre- and post- judgment interest as allowed by law, that it recover its taxable costs of court, and such other and further relief, at law and in equity, to which it may be justly entitled.

Respectfully submitted,

_/s/ Charles T. Kelly_____
Charles T. Kelly
State Bar No. 11216840
Southern District No. 13633
kelly@kellysmithpc.com
**KELLY, SMITH & SCHMIDT, P.C.**
12621 Featherwood Dr., Ste. 150
Houston, Texas 77034
Telephone: (713) 861-9900
Facsimile: (713) 861-7100
**ATTORNEY FOR PLAINTIFF
AMERICAN HOME ASSURANCE
COMPANY, AS SUBROGEE FOR
ARCELORMITTAL TEXAS HBI LLC AND
ARCELORMITTAL USA HOLDINGS III LLC**