UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AMERICAN HOME ASSURANCE COMPANY, AS SUBROGEE OF ARCELORMITTAL TEXAS HBI LLC, ET AL.<br><br>Plaintiff,<br><br>v.<br><br>MIDREX TECHNOLOGIES INC.; SIEMENS INDUSTRY, INC.; LEXICON, INC.; PRIMETALS TECHNOLOGIES USA LLC; ALTRAD SERVICES LIMITED; AND ALTRAD SERVICES LIMITED f/k/a ALTRAD YORK LININGS LIMITED,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:24-cv-00182 |

## DEFENDANTS ALTRAD SERVICES LIMITED AND ALTRAD YORK LININGS LIMITED'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (ECF NO. 25) AND MEMORANDUM IN SUPPORT OF THE SAME

This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.

Represented parties should act through their attorney.

# TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................................1

    I.       Altrad's Corporate History ......................................................................................3

    II.      Plaintiff's Second Amended Complaint ...............................................................4

**ARGUMENT**.........................................................................................................................6

    I.       Standard of Review................................................................................................6

    II.      The Second Amended Complaint Fails to Establish General Jurisdiction Over Defendant Altrad. ........................................................................................................................9

    III.     The Second Amended Complaint Fails to Establish Specific Jurisdiction Over Defendant Altrad. ......................................................................................................................11

**CONCLUSION** ...................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Access Telecom, Inc. v. MCI Telecomms. Corp.*,

    197 F.3d 694 (5th Cir. 1999) .................................................................................... 9

*Burger King Corp. v. Rudzewicz*,

    471 U.S. 462 (1985) ................................................................................................. 9

*Clemens v. McNamee*,

    615 F.3d 374 (5th Cir. 2010) .................................................................................... 9

*Cunningham v. BCB Conglomerate, LLC*,

    359 F.Supp.3d 471 (E.D. Tex. 2019) ...................................................................... 12

*Daimler AG v. Baurman*,

    134 S. Ct. 746 (2014) ............................................................................................... 8

*Delgado v. Reef Resort Ltd.*,

    364 F.3d 642 (5th Cir. 2004) .................................................................................... 7

*Dunn v. A/S Em. Z. Svitzer*,

    885 F. Supp. 980 (S.D. Tex. 1995) ........................................................................ 10

*Fintech Fund, FLP v. Horne*,

    327 F.Supp.3d 1007 (S.D. Tex. 2018) ..................................................................... 3

*Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*,

    815 S.W.2d 223 (Tex. 1991) .................................................................................. 14

*Gundle Lining Constr. Corp. v. Adams Cty. Asphalt, Inc.*,

    85 F.3d 201 (5th Cir. 1996) ...................................................................................... 8

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,

    466 U.S. 408 (1984) ............................................................................... 10, 11

*Holt Oil & Gas Co. v. Harvey*,

    801 F.2d 773 (5th Cir. 1986) ............................................................................ 8

*Int'l Shoe Co. v. Washington*,

    326 U.S. 310 (1945) .......................................................................................... 8

*Johnston v. Multidata Sys. Int'l Corp.*,

    523 F.3d 602 (5th Cir. 2008) ................................................................. 8, 9, 10

*Kelly Law Firm, P.C. v. An Attorney for You*,

    679 F.Supp.2d 755 (S.D. Tex. 2009) ............................................................... 7

*Lloyd's Syndicate 457 v. Am. Glob. Maritime Inc.*,

    346 F.Supp.3d 908 (S.D. Tex. 2018) ........................................................... 7, 8

*Luv N' Care, Ltd v. Insta-Mix, Inc.*,

    438 F.3d 465 (5th Cir. 2006) ............................................................................ 6

*Moki Mac River Expeditions v. Drugg*,

    221 S.W.3d 569, 50 Tex. Sup. Ct. J. 498 (Tex. 2007)............................... 9, 11

*NavSav Holdings, LLC v. Beber*,

    724 F.Supp.3d 615 (E.D. Tex. 2024) ............................................................... 9

*Nunes v. NBCUniversal Media, LLC*,

    582 F.Supp.3d 387 (E.D. Tex. 2022) ............................................................. 11

*Panda Brandywine Co. v. Potomac Elec. Power Co.*,

    253 F.3d 865 (5th Cir. 2001) ..................................................................... 7, 12

*Quick Techs., Inc. v. Sage Grp. PLC*,

    313 F.3d 338 (5th Cir. 2002) ....................................................................................... 7

*Stroman Realty, Inc v, Antt*,

    528 F.3d 382 (5th Cir. 2008) ....................................................................................... 7

*Submersible Sys., Inc. v. Perforadora Cent., S.A.*,

    249 F.3d 413 (5th Cir. 2001) ....................................................................................... 8

*Wilson v. Belin*,

    20 F.3d 644 (5th Cir. 1994) .................................................................................... 6, 8

*Wyatt v. Kaplan*,

    686 F.2d 276 (5th Cir.1982) ........................................................................................ 6

**Statutes**

4 Charles Alan & Wright R. Miller, Federal Practice and Procedure § 1067.5 (3d ed. 2014) ....... 8

Tex. Civ. Prac. & Rem. Code Ann. § 17.041 ................................................................................ 7

**Rules**

Fed. R. Civ. P. 12(b)(2) ............................................................................................................ 6, 7

Defendants Altrad Services Limited and Altrad York Linings Limited[1] ("Altrad"), by and through undersigned counsel, hereby move to Dismiss the Second Amended Complaint ("SAC"), (ECF No. 25), filed by Plaintiff American Home Assurance Company ("AIG"), as Subrogee of Arcelormittal Texas HBI LLC ("Arcelor"), et al and submit this accompanying Memorandum in Support of their motion. The Court should dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2) because Plaintiff has not shown that the Court has personal jurisdiction over Altrad and because the Court does not have personal jurisdiction over Altrad.

**INTRODUCTION**

Altrad should not be a party in this case. AIG has named Altrad as one of several defendants involved in allegedly faulty construction and/or installation of materials used in a gas line connected to Arcelor's iron reduction furnace, allegedly leading to a fire at Arcelor's plant in 2022. Yet, even after two years, any investigation(s) AIG conducted in connection with payments made to its subrogee, and three Complaints, Plaintiff's personal jurisdiction allegations remain conclusory, and Plaintiff fails to establish why this Court has personal jurisdiction over Altrad—or indeed, why Altrad has any place in this dispute.

Altrad is an English corporation. It does not conduct any business in the United States, much less Texas. Not only does Altrad not have systematic and continuous contacts in Texas, it has also absolutely no contact with Texas, has never done business in the U.S. generally or Texas specifically with Arcelor, nor has it sold any product to any U.S. business entities, much less in Texas, or in connection with any of the facts alleged in Plaintiff's SAC. Plaintiff's conclusory

---

[1] Plaintiff names Altrad Services Limited and "Altrad Services Limited f/k/a Altrad York Linings Limited" as Defendants. This is an error. Altrad Services Limited owns Altrad York Linings Limited and has never been formally named Altrad York Linings Limited. (*See* Declaration of Paul Davison, "Davison Decl.," ¶8.); *see also* https://find-and-update.company-information.service.gov.uk/company/03337119.

1

allegations that Altrad conducts business in Texas are insufficient to subject Altrad to this Court's general jurisdiction. Further, Plaintiff's imprecise allegations are insufficient to demonstrate Altrad's purposeful availment of Texas' laws, any factual nexus with the events in question, or the underlying fairness necessary for this Court to exercise specific jurisdiction. Most importantly, Altrad maintains that it was not involved in the complained-of conduct in any way. Altrad: (a) has intentionally and purposefully avoided doing business in the U.S.; (b) has purposefully avoided selling any product or material into the U.S.; (c) was not involved in the construction of the industrial facility at issue; (d) did not supply any materials for its construction; (e) did not design any materials that were used in its construction; (f) did not employ any individuals that were in any way involved in its construction; and (g) did not enter any contract, purchase order, delivery or acceptance document(s) or other documents or communications which connect Arcelor to Altrad or Altrad to the design or construction of the subject industrial facility or the subject gas line(s).[2] AIG has provided nothing to this Court to suggest otherwise. For all these reasons, this Court should dismiss Altrad from this case for lack of personal jurisdiction.

---

[2] Virtually nothing in Altrad's motion is new to Plaintiff. Even before Plaintiff served its SAC on Altrad, Altrad made multiple attempts to communicate to Plaintiff that it was in no way involved in any of the alleged facts in Plaintiff's SAC. Altrad requested information supporting Plaintiff's decision to sue Altrad, and Plaintiff communicated that: (1) it was told by a co-defendant, Midrex, that "York" had done the work for Arcelor, and (2) Plaintiff produced a log that referenced "York" being on site and that referenced specific individuals who were affiliated with "York" who allegedly did work on the site. (*See* Davison Decl. ¶ 33.) Altrad engaged further with Plaintiff; explained its acquisition history to further evince its non-involvement; and demonstrated that there is a U.S. entity in the same general business as Altrad York Linings that (at the subject time) had a similar name, which is wholly unaffiliated with Altrad and which has never been affiliated with Altrad. Altrad communicated that none of the individuals identified in the log as being affiliated with "York" have ever been employed by or affiliated with Altrad, and Altrad inquired as to what else the Plaintiff may need to be convinced that it had sued the wrong party. Without producing any additional information or indicia of a proper or complete investigation, Plaintiff served Altrad and forced it to incur significant attorney fees and expenses in connection with this motion. Accordingly, Altrad reserves the right to move to recover its attorney fees and costs as a sanction against Plaintiff for proceeding without an appropriate investigation.

## I. Altrad's Corporate History[3]

Altrad's parent company, Altrad Group (which goes colloquially by "Altrad Services"), is one of the world's leading providers of industrial services and equipment. Altrad Group is a group consisting of approximately 200 independent and distinct subsidiary companies of the ultimate parent company, Altrad Investment Authority, SAS, which is registered in France.[4] (*See* Affidavit of Paul Davison, "Davison Decl.," ¶ 5.) Altrad Services Limited, parent company of Altrad York Linings Limited, is a corporation incorporated in England (not to be confused with the informal "Altrad Services" label ascribed above to the Altrad Group more generally). (Davison Decl. ¶¶ 6-8.) Altrad York Linings Limited specializes in refractory linings for industrial facilities and handles all phases of the project including engineering, demolition, installation, and inspections. (Davison Decl. ¶ 7.)

In June 2011, Altrad Services Limited, then named Cape Industrial Services Limited ("Cape"), acquired a group of companies from a holding company called York Linings Holdings Limited ("YLHL"), an English company (the "2011 Acquisition"). (Davison Decl. ¶¶ 10-14.) Prior to the 2011 Acquisition, YLHL had two wholly owned subsidiaries: York Linings International Limited ("YLIL"), a United Kingdom company, and York Linings International Incorporated ("YLI-US"), a United States company. (Davison Decl. ¶¶ 10-14.) The 2011

---

[3] This Court may consider information outside of the Second Amended Complaint in deciding this Motion. *See Fintech Fund, FLP v. Horne*, 327 F.Supp.3d 1007, 1016 (S.D. Tex. 2018) ("In making its determination [on a motion to dismiss for lack of personal jurisdiction], the district court may consider the contents of the record before the court at the time of the motion, including affidavits, interrogatories, depositions oral testimony, or any combination of the recognized methods of discovery." (internal citation and quotation omitted)).

[4] Two subsidiaries of the Altrad Group are registered to do business and have operations in Texas—Sparrows Offshore LLC ("Sparrows") and RMD Kwikform North America Inc. ("RMDK"). Sparrows provides services to the industrial, offshore energy, and renewables sectors and became part of the Altrad Group in July 2022. (Davison Decl. ¶ 35.) RMDK provides above and below ground temporary works systems, including scaffolding and heavy-duty support structures for construction projects. (*Id*.) Neither subsidiary is affiliated with Altrad Services Limited or Altrad York Linings Limited, and neither subsidiary had any involvement with the Arcelor plant installation. (*Id*.)

Acquisition was accomplished through a Share Purchase Agreement. That Share Purchase Agreement carved YLI-US out of the transaction, so Cape acquired <u>only</u> the English subsidiary, YLIL.[5] (Davison Decl. ¶ 13.) In June 2021, Cape changed its name to Altrad Services Limited, at which point YLIL was renamed Altrad York Linings Limited. (Davison Decl. ¶ 15.)

At no point during its respective ownership by Cape or Altrad did YLIL or, later, Altrad York Linings Limited ever conduct any business in Texas, or more specifically with Plaintiff Arcelor. (Davison Decl. ¶¶ 17-33.)

## II. Plaintiff's Second Amended Complaint

On November 12, 2024, Plaintiff filed its Second Amended Complaint as subrogee of Arcelor in the Southern District of Texas against multiple defendants, including Altrad. Plaintiff brings claims of negligence and strict liability.

Arcelor, subrogor for Plaintiff AIG, owns an iron reduction plant in Corpus Christi, Texas and utilizes a proprietary iron reduction process owned by co-defendant Midrex Technologies, Inc. ("Midrex"). (SAC ¶ 11.) Midrex's process reduces iron ore to usable iron via a gas-shaft furnace that removes the oxygen bound to the iron and leaves behind purified iron. (*Id.*) Plaintiff does not specify when Midrex's system was installed at Arcelor's plant—which is part and parcel of the SAC's general lack of details as to the alleged negligence underlying its claims.[6]

---

[5] Contemporaneously with the 2011 Acquisition, YLI-US was purchased by an English resident named James Black. Mr. Black was one of the owners of YLHL shares that Cape purchased to acquire YLIL from YLHL. According to publicly available records, YLI-US was renamed York Construction, Inc. in 2012, reincorporated in Delaware, and re-registered to do business in Alabama. (Davison Decl. ¶ 14.) Altrad has no knowledge of who currently owns YLI-US and/or York Construction, whether that company remains a going concern, whether it worked with Arcelor or in Texas or whether it even still exists, but between the time of the 2011 Acquisition and Altrad's 2021 renaming of YLIL to Altrad York Linings a significant period of time passed during which YLI-US and/or York Construction operated in the U.S. and had a name that was similar to YLIL.

[6] While Plaintiff did not specify when the work was performed, Altrad has deduced that the work evidently took place around 2017, based on the log provided to Altrad from Plaintiff, via co-defendant Midrex. (Davison Decl. ¶ 33.) As stated *infra* footnote 2, none of the individuals identified in the log as being affiliated with "York" have ever been employed by or affiliated with Altrad. (*Id.*)

4

Plaintiff alleges that a fire took place on August 14, 2022, as a result of a faulty vertical expansion joint in the gas line connected to the furnace. (SAC ¶ 12.) Plaintiff contends that the expansion joint "suffered a failure of the refractory material and the insulation lining the interior of the expansion joint," which led to a rupture in the joint and an ensuing fire. (*Id.*) Plaintiff asserts that the fire resulted in economic damages totaling just under $7M. (*Id.* ¶ 13.) All Defendants named in the SAC were allegedly involved in some way with the design, construction, manufacturing, or installation of the refractory material, insulation, and metal components of the expansion joint. (*Id.* ¶ 14.)

The SAC's allegations as to Altrad's involvement in this issue are hardly a model of clarity. Plaintiff asserts in conclusory fashion that Altrad is a United Kingdom corporation "doing business in Texas." (*Id.* ¶¶ 6-7.) Plaintiff offers no allegations as to how Altrad allegedly came to be involved with the Arcelor plant or who contracted with Altrad, whom specifically at Altrad may have played a role in the process relating to the expansion joint, or which specific actions Altrad took regarding the expansion joint beyond alleging "installation" and "manufacturing." Even there, Plaintiff is noncommittal and nonspecific—falling short of even notice pleading standards by caveating that "[t]he refractory and/or its component materials were installed by Lexicon and/or Altrad York Linings" and that "[t]his field installation would have been performed by Lexicon and/or Altrad." (*Id.* ¶¶ 15, 17.) Setting aside that Plaintiff is unclear on which party performed which action, whether one or the other did or both, Plaintiff also alleges no facts as to <u>when</u> this installation took place or what role Altrad played. On these paper-thin allegations, Plaintiff then accuses Altrad of a wide variety of malfeasance and derelictions, including a failure to employ reasonable quality assurance methods, failure to inspect the joint for defects, failure to properly mix the refractory substrate, failure to supervise its employees in the above responsibilities, and

failure to warn Plaintiff adequately of the dangers of improper installation and construction of the insulation and refractory material. (*Id.* ¶ 26.)

Altrad received service of the Second Amended Complaint in England via the Hague Convention on November 21, 2024.

**ARGUMENT**

The Second Amended Complaint should be dismissed under Rule 12(b)(2) because it fails to establish this Court's personal jurisdiction—either general or specific—over Altrad. Altrad consists of two English corporations. Plaintiff has not shown that Altrad has ever had substantial, continuous, or systematic contacts with the state of Texas to justify bringing an action against it in this Court. And more to the point, neither Altrad Services Limited nor Altrad York Linings Limited had any involvement whatsoever in the construction of Arcelor's plant or installation of the bustle gas line or expansion joint that is the subject of this lawsuit. Altrad did not direct any activities to the state of Texas and does not maintain the requisite level of "minimum contacts" to confer jurisdiction upon this Court.

**I.      Standard of Review**

Plaintiff bears the burden of proving personal jurisdiction over a defendant. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) ("When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident."); *see also Luv N' Care, Ltd v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir.1982)). At the pretrial stage of litigation, if the Court does not conduct a hearing on personal jurisdiction, the plaintiff need only present a *prima facie* case of personal jurisdiction. *Luv N' Care*, 438 F.3d at 469.

When a defendant disputes factual bases for personal jurisdiction, the Court may consider the record before it, including "affidavits, interrogatories, depositions, oral testimony, or any

combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002); *Kelly Law Firm, P.C. v. An Attorney for You*, 679 F.Supp.2d 755, 762 (S.D. Tex. 2009). And while factual conflicts on a Rule 12(b)(2) motion should be resolved in favor of the plaintiff, that does not in any way require the Court to accept conclusory allegations as sufficient to show a *prima facie* case of personal jurisdiction. *See Panda Brandywine Co. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) ("Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a prima facie case for specific jurisdiction has been presented. Establishing a prima facie case still requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state."). In the case at bar, Altrad has filed an affidavit on behalf of both Defendants from Paul Davison, Head of Commercial at Altrad Services, detailing both Altrad Services Limited and Altrad York Linings Limited's lack of contacts with the State of Texas. (Davison Decl. ¶¶ 17-35.)

"A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution." *Lloyd's Syndicate 457 v. Am. Glob. Maritime Inc.*, 346 F.Supp.3d 908, 926 (S.D. Tex. 2018) (citing *Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004).[7]

The protections of due process with respect to personal jurisdiction require that a court may only exercise jurisdiction over an entity if that entity has sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play

---

[7] This Court need not consider whether Texas's long-arm statute, Tex. Civ. Prac. & Rem. Code Ann. § 17.041, permits the exercise of jurisdiction because that statute's reach is coterminous with the limits of constitutional due process. *Stroman Realty, Inc v, Antt*, 528 F.3d 382, 385 (5th Cir. 2008).

7

and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citation and quotation omitted); *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). This principle "presaged the development of two categories of personal jurisdiction": general and specific. *See Daimler AG v. Baurman*, 134 S. Ct. 746, 754 (2014); *Wilson*, 20 F.3d at 647 ("The 'minimum contacts' prong of the inquiry may be further subdivided into contacts that give rise to 'specific' personal jurisdiction and those that give rise to 'general' personal jurisdiction.").

General jurisdiction does not require that a lawsuit be related to the defendant's contacts with the forum state and permits a court to hear all claims against that entity. "To exercise general jurisdiction, the court must determine whether the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction." *Holt Oil & Gas Co. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (internal citation and quotation omitted). The "continuous and systematic" test is a "difficult one to meet, requiring extensive contacts between a defendant and a forum" because of the wide latitude afforded under general jurisdiction. *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001); *see also* 4 Charles Alan & Wright R. Miller, Federal Practice and Procedure § 1067.5 (3d ed. 2014) ("[T]he threshold contacts required for a constitutional assertion of general jurisdiction over a nonresident defendant are very substantial, indeed.").

Specific jurisdiction may apply "when the nonresident defendant's contacts with forum state arise from, or are directly related to, the cause of action." *Lloyd's Syndicate 457*, 346 F.Supp.3d at 926 (citing *Gundle Lining Constr. Corp. v. Adams Cty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996)). Not only must the litigation result from injuries related to activities within the forum state, but the plaintiff must also prove that defendant "purposefully directed" their

activities at residents of that forum. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Purposeful availment requires that a defendant seek "some benefit, advantage, or profit, by 'availing' itself of the jurisdiction." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 578, 50 Tex. Sup. Ct. J. 498 (Tex. 2007). Furthermore, the purposefully-directed activities must be foreseeable; they must rise to a level where a defendant could "reasonably anticipate being hauled into court in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

## II. The Second Amended Complaint Fails to Establish General Jurisdiction Over Defendant Altrad.

Even construing the Second Amended Complaint in a light most favorable to Plaintiff, it cannot establish general jurisdiction over Altrad. Plaintiff's only statements bearing on this Court's jurisdiction with respect to Altrad are an unsupported (and false) assertion that Altrad is "doing business in the State of Texas" (SAC ¶¶ 6-7) and a (again false) general allegation that "Defendants . . . have conducted systematic and continuous business activities in the State of Texas." (SAC ¶ 9.) These conclusory allegations, sandwiched between acknowledgments that Altrad consists of two English companies with their headquarters in England, are insufficient to establish general jurisdiction over Altrad.

It is settled law in Texas that "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610; *see also Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) (explaining that general jurisdiction is examined by "evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed"); *NavSav Holdings, LLC v. Beber*, 724 F.Supp.3d 615, 625 (E.D. Tex. 2024) (explaining that "[m]erely doing business in the state is not enough" to establish personal jurisdiction and that a court must assess a company's local activity "not in isolation, but in the context of the company's

9

overall activity"). Plaintiff's complaint contains absolutely no facts regarding the extent, nature, or regularity of Altrad's purported activity, contacts, or business in Texas. Thus, Plaintiff hardly satisfies the test of "substantial, continuous, and systematic" contacts required to find general jurisdiction. *Johnston*, 523 F.3d at 609 (5th Cir. 2008). For that reason alone, Plaintiff has not established this Court's jurisdiction over Altrad.

That Plaintiff's allegations are both conclusory and insufficient is unsurprising because neither Altrad Services Limited nor Altrad York Linings Limited (formerly known as YLIL) does or has done any business in Texas. (Davison Decl. ¶¶ 17-33.) Neither is registered with the Texas Secretary of State. (Davison Decl. ¶ 21.) Neither has any records of business conducted in Texas. (Davison Decl. ¶¶ 17, 21, 29.) And neither Altrad Services Limited nor Altrad York Linings Limited (formerly known as YLIL) has any facilities in Texas. (*Id*.) Contracts records provided by Altrad show that across YLIL's various departmental projects, it only conducted one project in Texas from 1996-1997, roughly fifteen years before Cape acquired YLIL. There have been no projects in Texas—or indeed in the entire United States—since Cape acquired YLIL in 2011. (Davison Decl. ¶¶ 17-33.) It can hardly be said that Altrad has "minimum contacts" with the state of Texas when any such alleged contacts are nonexistent.[8]

As discussed *supra*, establishing sufficient contacts to impose general jurisdiction is a high bar. For example, in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984), the defendant purchased helicopters in Texas—80% of its fleet—as well as spare parts and

---

[8] Two Altrad Group subsidiaries that are distinct from and unaffiliated with Altrad Services Limited and Altrad York Linings Limited—Sparrows and RDMK —are registered and may conduct business in Texas. (Davison Decl. ¶ 35.) However, that has no bearing on whether this Court has personal jurisdiction over Altrad Services Limited and Altrad York Linings Limited. *See, e.g.*, *Dunn v. A/S Em. Z. Svitzer*, 885 F. Supp. 980, 987 (S.D. Tex. 1995) (explaining that "[a]s long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in the forum may not be attributed to the other"). That principle may also be applied to separate subsidiaries—as here, where Sparrows, RDMK, Altrad Services Limited, and Altrad York Linings Limited are separate and distinct corporate entities that are subsidiaries of the Altrad Group but otherwise wholly unaffiliated. (Davison Decl. ¶ 35.)

10

accessories, spending over $4 million. Defendant in that case also sent prospective pilots to Texas for training, sent management and maintenance personnel to Texas for technical consultations, and received a check for over $5 million that was drawn on a Texas bank. Still, the United States Supreme Court held that those contacts, even in total, were not substantial enough to confer general jurisdiction over the defendant. *Helicopteros*, 466 U.S. at 411. Here, no contacts exist and Plaintiff has not even attempted to allege contacts that could rise to the requisite level. Thus, the Second Amended Complaint fails to establish general jurisdiction.

> **III.    The Second Amended Complaint Fails to Establish Specific Jurisdiction Over Defendant Altrad.**

The Second Amended Complaint similarly fails to establish specific jurisdiction over Altrad. "A Texas court may assert specific jurisdiction over an out-of-state defendant if the defendant's contact with [the] state is purposeful and if the injury arises from or relates to those contacts." *Moki*, 221 S.W.2d at 572-573. That is hardly the case here.

To exercise specific jurisdiction over a defendant, the court must assess: "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nunes v. NBCUniversal Media, LLC*, 582 F.Supp.3d 387, 398 (E.D. Tex. 2022). Critically, only the <u>Defendant's</u> contacts with the forum are relevant, and not the unilateral activity of another party or a third person. *Moki*, 221 S.W.2d at 575.

Plaintiff cannot and does not allege what specific work Altrad allegedly conducted on the expansion joint at issue. In relevant part, Plaintiff alleges that "[t]he refractory and/or its component materials were installed by Lexicon <u>and/or</u> Altrad York Linings" and that "the field installation would have been performed by Lexicon <u>and/or</u> Altrad." (SAC ¶¶ 15, 17.) Even on its

11

third iteration of the complaint, Plaintiff conditions Altrad's involvement with an "and/or" statement sweeping in another third party, an implicit concession that Plaintiff does not know if Altrad is the right party to be named in this suit. The conclusion is obvious: Plaintiff has no idea whether Altrad had any involvement in the alleged conduct, and no factual basis to substantiate the allegation. This Court is under no obligation to accept such conclusory obligations with respect to its jurisdiction, especially where—as here—they are caveated to such a degree as to be meaningless, provide the Court no usable information, avoid making a firm allegation, avoid (or at least do not achieve) even a notice pleading standard, and where they so clearly concede a lack of certainty or information. *See Panda Brandywine Co.*, 253 F.3d at 868.

Plaintiff grounds the rest of its allegations on the supposition that Altrad constructed the refractory lining (again without any specific details) and failed various duties with respect to quality assurance, inspections, testing, and warning. There are no accompanying allegations as to what Altrad products were allegedly sold in Texas, when they were sold, or by whom. There are no allegations that Altrad sold any products with the intent that they be used, sold, installed or implemented in the United States, much less Texas or that it intended its products (if any) to be sold in Texas or that Altrad was involved in any tangible way in the installation or construction of the expansion joint at the Arcelor facility—thus depriving the Court of the "who, what, when, where, and how" that might enable it to assess its jurisdiction over a foreign defendant. *See Cunningham v. BCB Conglomerate, LLC*, 359 F.Supp.3d 471, 479 (E.D. Tex. 2019) (explaining that a defendant's minimum contacts with the forum state must be more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person"). There are no allegations as to where Altrad manufactured any of the components of the expansion joint, nor is there any specificity as to which components Altrad manufactured or how they allegedly made it

to Texas—again no surprise because none were manufactured, sold, implemented or installed in Texas.

And once more—and most critically—Altrad in fact was not involved whatsoever with any manufacturing, installation, or production work for any components at the Arcelor facility. (Davison Decl. ¶¶ 30-32.) While Altrad is aware of a similarly named company registered in Alabama spun out from companies that Altrad purchased as part of the 2011 Acquisition, Altrad can state with certainty that neither Altrad Services Limited nor Altrad York Linings Limited (formerly known as YLIL), nor Cape, were involved in any way in the alleged conduct or subject matter at issue or giving rise to Plaintiff's claims. (Davison Decl. ¶¶ 17-37.) This Court cannot conclude that it has specific jurisdiction over Altrad where Plaintiff offers no specific allegations as to how Altrad availed itself of this forum state's privileges—and where Altrad produces evidence that it did not, maintains that it did not, and where it appears that Plaintiff may have sued (and maintained its suit) against Altrad merely because at one time it had a name that was similar to a U.S. entity.

This Court need not reach the issue of whether jurisdiction comports with fair play and substantial justice because Plaintiff has failed to establish minimum contacts as a threshold matter. However, were this Court to address that issue, Altrad notes that the burden on Altrad would be significant, as it has no employees, agents, physical plant, real estate, or presence of any kind in the United States, does not and has never done business in the United States, is wholly unfamiliar with the laws of the United States, and would be required to litigate this case in Texas entirely from England. Plaintiff also would not find convenient or effective relief in Texas, as any witnesses or documents as to Altrad necessary to prove a case would be housed in England. Even if Plaintiff secured a judgment against Altrad, it would have to be executed in England. *See*

*Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991) (explaining the various factors Texas courts use to consider the issues of fair play and substantial justice to exercise jurisdiction over a party).

## CONCLUSION

This Court lacks jurisdiction over Altrad because Altrad does not have the requisite minimum contacts with the state of Texas and did not have any involvement in the complained-of conduct. Therefore, the Second Amended Complaint should be dismissed as to Altrad for lack of personal jurisdiction.

Dated: December 23, 2024

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Christopher W. Jones*
Christopher W. Jones (*pro hac vice* admitted)
N.C. State Bar I.D. No: 27265
Zachary N. Bernstein (*pro hac vice* admitted)
N.C. State Bar I.D. No. 61681
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Telephone: (919) 755-2100
Facsimile: (919) 755-2150
Email: christopher.jones@wbd-us.com
zachary.bernstein@wbd-us.com

*Counsel for Defendants Altrad Services Limited and Altrad York Linings Limited*

## CERTIFICATE OF SERVICE

I certify that on December 23, 2024, I caused a copy of the foregoing Motion to Dismiss the Second Amended Complaint and supporting materials to be served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas on all counsel in this case.

*/s/ Christopher W. Jones*
Christopher W. Jones